## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SA HOSPITALITY GROUP, LLC et | : | |
| al. on behalf of themselves and all | : | |
| others similarly situated | : | No. 20-cv-1033 (VLB) |
|    Plaintiffs, | : | |
| | : | |
| v. | : | June 3, 2021 |
| | : | |
| HARTFORD FIRE INS. Co. | : | |
|    Defendant. | : | |
| | : | |
| | : | |

## MEMORANDUM OF DECISION GRANTING DEFENDANT'S MOTION TO DISMISS, Dkt. 11

This is an insurance coverage dispute concerning whether Defendant Hartford Fire Insurance Company ("Harford Fire") is obliged to indemnify Plaintiff SA Hospitality Group, LLC and its subsidiaries (collectively "SA Hospitality") for loss business income and extra expenses incurred as a result of civil authority orders suspending or curtailing non-essential business activity to slow the spread of COVID-19. *See generally*, [Dkt. 1 (Compl.)]. The complaint was filed as a putative nationwide class action. [Compl. ¶¶ 66-81](class action allegations).

Now before the Court is Hartford Fire's motion to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). For reasons articulated below, the Court grants Hartford Fire's motion.

### Background

For the purpose of deciding Hartford Fire's motion to dismiss, the Court "draw[s] all reasonable inferences in Plaintiff['s] favor, assume[s] all well-pleaded factual allegations to be true, and determine[s] whether they plausibly give rise to

1

an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d. Cir. 2011) (citations omitted). The following facts are drawn from the allegations in the Complaint. The Court may also consider the insurance policy at issue because, although it was not affixed to the complaint as an exhibit or expressly incorporated by reference, it is integral to the coverage dispute and the Plaintiffs quote it extensively in the Complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Hartford Fire filed a complete copy of insurance policy no. 13 UUN BL 4042, Property Choice Coverage Part, between SA Hospitality Group, LLC and Hartford Fire Insurance Co., for the policy period of June 1, 2019 to June 1, 2020, as an exhibit to its motion to dismiss. [Dkt. 11-1 (Decl. of Charles Michael)]; [Dkt. 11-3, Def. Ex. A][hereinafter the "Policy"].

The Court can also take judicial notice of pleadings filed in other actions as a public record without converting the motion into a motion for summary judgment pursuant to Fed. R. Evid. 201(b); *see Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

I.    <u>Insurance policy provisions at issue</u>

As a general proposition, "the purpose of business interruption insurance is to indemnify the insured against losses arising from an inability to continue normal business operations and functions due to damage sustained as a result of the hazard insured against. In other words, the goal is to preserve the continuity of the insured's earning." *United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128, 131 (2d Cir. 2006). It is a form of first-party property insurance. *Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233-34 (3d Cir.

2002)(distinguishing between first-party and third-party insurance contracts when interpreting "physical loss" under a commercial property insurance policy).

The insuring agreement for the Policy's business interruption coverage component is contained in Section A of the Property Choice- Special Business Income Coverage form, Form PC 00 20 0113, HFIC00080, [Dkt. 11-3 at 80]. It states:

> We will pay up to the Special Business Income Limit of Insurance stated in the Property Choice -Schedule of Premises and Coverages for the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur due to the necessary interruption of your business operations during the Period of Restoration *due to direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss* at "Scheduled Premises" where a limit of insurance is shown for Special Business Income. If you are a tenant, this Coverage applies to that portion of the building which you rent, lease or occupy, and extends to common service areas and access routes to your area. (emphasis added)

The term "Extra Expense" is defined in Section A(2) of the business interruption section of the Policy to mean, in relevant part:

> … the actual, necessary and reasonable expenses you incur during the Period of Restoration that you would not have incurred *if there had been no direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss* at "Scheduled Premises".

*Id.* (emphasis added)

The insuring agreement for the Policy's civil authority coverage extension is contained in section A (2)(a) of the Property Choice Special Business Income-Additional Coverages section of the Policy, Form PC 26 02 01 13, HFIC00065, [Dkt. 11-1 at 66]. It provides that:

> This insurance is extended to apply to the actual loss of Business Income you sustain and the actual, necessary and reasonable Extra Expense you incur *when access to your "Scheduled Premises" is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss*

3

to property in the immediate area of your "Scheduled Premises". (emphasis added)

The term "Covered Cause of Loss" in the business interruption section of the Policy is defined by cross reference to mean:

…*direct physical loss or direct physical damage* that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded or limited in this policy.

Section A, Property Choice Covered Causes of Loss and Exclusion Form, Form PC 00 20 0113, HFIC00086 [Dkt. 11-3 at 87](emphasis added).

The phrase "direct physical loss or direct physical damage" is undefined by the Policy.

## II.   SA Hospitality's claim

On March 11, 2020, the World Health Organization declared COVID-19 a global pandemic. [Dkt. 1 (Compl.) ¶ 1](citing *WHO Director-General's Opening Remarks at the Media Briefing on COVID-19*, World Health Organization (March 11, 2020), https://www.who.int/director-general/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020). Two days later, the President of the United States declared a national state of emergency. [Compl. ¶ 2](citing *Presidential Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, 85 FR 15337 (Mar. 13, 2020)). As is now commonly known, the virus is spread from close contact with symptomatic, pre-symptomatic, and asymptomatic infected persons. [Compl. ¶¶ 39-42, 44]. The virus can also live on common surfaces, like cardboard, copper, and stainless steel and is detectable in aerosols, thus contact with contaminated

4

surfaces and airborne particles may be additional transmission routes. [Compl. ¶¶ 43-44].

In response to the virus's infectivity and lethality, governmental entities entered civil authority orders suspending or severely curtailing operation of non-essential businesses to slow the spread of the virus. [Compl. ¶¶ 3, 47-48]. These restrictions and prohibitions adversely effected most non-essential businesses, especially restaurants and foodservice businesses. [Compl. ¶ 4].

SA Hospitality owns and operates restaurants and other dining establishments in New York and Florida that were adversely impacted by closure orders restricting restaurants and bars to take-out service and delivery only. [Compl. ¶ 48]. SA Hospitality procured a standard form all-risk commercial property insurance policy from Hartford Fire, which includes business interruption coverage to indemnify policy holders for lost income and profits if their business is shutdown. [Compl. ¶¶ 49-51].

By letter dated April 8, 2020, Hartford Fire denied SA Hospitality's claim for indemnification for business interruption losses under the Policy because their properties had not suffered any direct physical loss and because the losses were excluded by the bacteria and virus exclusion endorsement. [Compl. ¶ 61].[1] Two weeks later, SA Hospitality filed a putative class action against Hartford Fire in the Southern District of New York. *SA Hospitality Group, LLC, et al., on behalf of*

---

[1] The Complaint alleges that Hartford Fire also denied coverage based on "… other exclusions which were not applicable to Plaintiffs' losses," but the complaint does not specify which additional exclusions purportedly applied. [Compl. ¶ 61]. Nor does the parties' briefing address any other relevant exclusion or coverage defense beyond the two issues adjudicated herein

*themselves and all others similarly situated v. The Hartford Financial Group, Inc., et al.*, No. 20-cv-3258 (GHW); [Dkt. 11-6, Def. Ex. D (Compl. in 20-cv-3258 (GHW))]. SA Hospitality voluntarily dismiss the complaint after Hartford Fire filed a motion to dismiss. [*SA Hospitality Group, LLC, et al.*, 20-cv-3258, *supra.*, ECF No. 33 (Mot. to Dismiss), ECF. No. 36 (Not. of Vol. Dismissal)].

SA Hospitality then commenced a substantially similar action in this District. The gravamen of their complaint before this Court is that civil authority orders trigger coverage under the business interruption policy because the orders themselves allegedly caused direct physical loss and damage to the Plaintiffs' and the other class members' Covered Properties, requiring suspension of operations at the Covered Properties. *See* [Compl. ¶ 95]. Plaintiff argues that the Policy's virus exclusion does not preclude coverage because its losses were caused by the civil authority orders, not the virus. [Compl. ¶ 60]. The Complaint seeks a declaration that Hartford Fire is liable for losses under the "Business Income" coverage provisions (Count 1, Compl. ¶¶ 82-88), "Civil Authority" (Count 3, Compl. ¶¶ 99-105), and "Extra Expense Coverage" provisions (Count 5, Compl. ¶¶ 114-120) provisions of the Policy. SA Hospitality also brought breach of contract claims based on Hartford Fire's coverage obligations under each of these policy provisions.

<u>Discussion</u>

I.   <u>Legal Standard</u>

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005). As discussed above, the Court takes judicial notice of the

insurance policy at issue and the disposition of SA Hospitality's first complaint filed in the Southern District of New York.

II.    Applicable law

The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1331(d) because this is a class action in which the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the putative class is a citizen of a different state than that of Defendant. [Compl. ¶ 12]. Even absent application of the Class Action Fairness Act, diversity jurisdiction under 28 U.S.C. § 1331(a) exists because SA Hospitality and all of its joined subsidiaries are citizens of New York and Hartford Fire is a Connecticut citizen. *See* [Compl. ¶¶ 15-33].

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941). Absent a choice of law provision in a contract, Connecticut courts apply the "most significant relationship" test of the Restatement (Second) of Conflict of Laws § 188. *Reichhold Chemicals, Inc. v. Hartford Accident & Indem. Co.*, 252 Conn. 774, 781 (2000) (a/k/a "*Reichhold II*").

In *Reichhold II*, the Connecticut Supreme Court recognized a rebuttable presumption in favor of applying the law of the state "which the parties understood was to be the principal location of the insured risk." 252 Conn. at 782 (citing § 193 of the Restatement (Second)). That presumption may be overcome by a showing of "…*exceptional* circumstances where the interests of another state *substantially* outweigh the interests of the site state." *Id.* at 789 (emphasis added).

8

Here, Hartford Fire argues that New York law applies because it is the location of the insureds' risk as all the insured restaurants are New York limited liability companies with their principal places of business in New York. [Dkt. 11 (Def. Mem. in Supp.) at 12].[2] SA Hospitality does not address the choice of law issue or argue that another state's law applies; instead, it argues for a competing interpretation of New York insurance law, tacitly conceding that New York law applies. *See, e.g.* [Dkt. 16 (Pls. Mem. in Opp'n) at 11-26]. Although both parties cite decisions applying law from other states, the object of the Court's inquiry is to "… ascertain what the [New York] law is, not what it ought to be." *Klaxon Co*, 313 U.S. at 497. To put a finer point on the matter, the Court is bound to follow state law as interpreted by its intermediate appellate courts unless the Court finds persuasive evidence that the highest state court, which has not ruled on the issue, would reach a different conclusion. *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 134 (2d Cir. 1999)

III.   <u>Whether SA Hospitality alleged "direct physical loss"</u>

The language "*due to direct physical loss of or direct physical damage to property,*" is a condition precedent to triggering Business Income and Extra Expense coverage under the Policy. SA Hospitality does not dispute that this is a triggering condition, but rather argues that it sustained a "direct physical loss" because it was unable to use its property for its intended purpose because of civil authority orders restricting access to reduce the spread of COVID-19. [Pls. Mem. in Opp'n at 17-25]. The Court agrees with Hartford Fire that this language is

---

[2] Unless otherwise stated, all pin citations to the parties' briefing refers to the page number in the ECF header caption.

unambiguous, and its interpretation is controlled by *Roundabout Theatre Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4 (1st Dep't 2002). SA Hospitality fails to present a persuasive argument to show that the New York Court of Appeals would reach a different conclusion.

"It is well established under New York law that a policyholder bears the burden of showing that the insurance contract covers the loss." *Morgan Stanley Grp. Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000). "[T]he initial interpretation of a contract is a matter of law for the court to decide." *Id.* (citations and internal quotations omitted). This threshold inquiry concerns whether the insurance policy's terms are ambiguous; "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning and the interpretation of such provisions is a question of law for the court." *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (N.Y. 2007)(internal citations omitted).

It is well established that if a policy provision is ambiguous, it is construed against the insurer. *Id.* A policy provision is ambiguous if it is "susceptible to two reasonable interpretations." *State v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985). Ambiguity is not determined by reading the insurance policy's terms in isolation, but rather "….when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley Grp. Inc.*, 225 F.3d at 275. Courts seek to avoid surplusage when interpreting insurance policies. *Westview Assocs.*

*v. Guar. Nat. Ins. Co.*, 95 N.Y.2d 334, 339 (2000). The Court must give effect to all the terms of the policy and not treat any term as meaningless.

In *Roundabout Theatre Co.*, the insured-theater company sought business interruption coverage for lost income and extra expenses for cancelled performances when its theatre was rendered inaccessible by a city order closing the street after an elevator on an adjacent building collapsed. 751 N.Y.S.2d at 4-5. The theatre itself sustained minimal damage to its roof and air conditioning system, which was repaired within a day, but the theatre remained inaccessible pursuant to the city order for about a month. *Id.* at 5. The insured's business interruption insurance coverage was triggered by "interruption, postponement or cancellation of an insured Production *as a direct and sole result of loss of, damage to or destruction of property or facilities (including the theatre building occupied ... by the Insured, and [certain equipment] )*." *Id.* at 5 (emphasis in original).

The insurer disclaimed coverage, *inter alia*, because the policy required "physical damage to the property or facilities contracted by the Insured." *Id.* at 5-6. On summary judgment, the insured's assignee argued that coverage "existed because this was an "all-risk" policy, the loss at issue was "fortuitous," and because the policy's reference to "loss of, damage to, or destruction of property or facilities" should be read to include "loss of use" of the premise…" *Id.* at 6. The trial court granted summary judgment for the insured's assignee, finding that coverage existed under the policy because "loss of, damage to, or destruction of [the insured's] property or facilities" encompasses a "loss of use" of the property

[,] otherwise, […] the phrase "loss of" would be redundant to "destruction of" the property." *Id.*

The Appellate Division reversed the trial court and entered judgment for the insurer. First, the appellate court held that the trial court erred when it placed the initial burden on the insurer to provide that the loss was excluded, rather than on the insured to show that the policy was triggered. *Id.* at 6-7. In other words, "[l]abeling the policy as "all risk" does not relieve the insured of its initial burden of demonstrating a covered loss under the terms of the policy." *Id.* at 6 (citing *Whitaker v. Nationwide Mut. Fire Ins. Co.*, 115 F. Supp. 2d. 612, 617 (E.D. Va. 1999)).

The Appellate Division repudiated the trial court's reasoning that the term "loss of" must include "loss of use of" to avoid redundancy with "destruction of" the property. *Id.* Instead, the Appellate Division reasoned that "loss of, damage to, or destruction of property or facilities" must be read in the context of the perils insured against: " 'all risks of direct physical loss or damage to the [insured's] property,' not otherwise excluded." *Id.* The words "direct" and "physical" contained in the definition of the perils insured against narrowed the scope of coverage and precluded coverage for losses resulting from off-site property damage. *Id.* The Appellate Division held that the insuring agreement "clearly and unambiguously provides coverage only where the insured's property suffers direct physical damage." *Id.* at 8.

The Appellate Division found additional support for this interpretation in the policy section titled Definition of Loss, which would not extend to "rebuild[ing], repair[ing], or replac[ing]" a third party's property. *Id.* at 8. It also considered the

policy's "Substitute Theatre" provision, which require the Insured to "… 'exercise due diligence and dispatch to occupy a substitute theatre ... following *loss of, damage to, or destruction of the theatre*,' ... and that the new theatre must be reasonably comparable in size and quality '*as the theatre which has been damaged or destroyed*.'" *Id*. at 8-9 (emphasis in original). Consequently, because the impetus for the City's closure of the street was not "physical damage" to the theatre, the loss resulting from the suspension of operations was outside of the scope of the policy. *Id*.

Thereafter, in *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323 (S.D.N.Y. 2014), the Southern District of New York sitting in diversity and applying New York state law, held that the preemptive utility shut-off to commercial buildings in preparation for a hurricane did not constitute "direct physical loss or damage" to the insured's property and thus coverage was not triggered. *See id*. at 327, n. 4 (explaining that New York law applies). The district court reasoned that "the words 'direct' and 'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id*. at 331 (citing *Roundabout Theatre Co*. 751 N.Y.S.2d at 8 and Couch on Insurance, § 148:46 (3rd ed.2009) (defining "physical loss" as a requirement which is "widely held to exclude alleged losses that are intangible or incorporeal") and § 167:15 ("business interruption policies generally require some physical damage to the insured's business in order to invoke coverage").

Every trial court in this circuit that has considered the issue has concluded that civil authority orders curtailing business operations in response to the COVID-19 pandemic do not constitute "direct physical loss of or physical damage to property" under New York law. [3] The New York's state trial courts are in accord. *Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 71 Misc. 3d 516, 2021 WL 609851, at *4 (N.Y. Sup. Ct. 2021)("… mere loss of use or functionality does not constitute a "direct physical loss" within the meaning of a policy providing coverage for "direct physical loss or damage" to covered property")(citing *Roundabout Theatre Co., Inc. v. Continental Cas. Co., supra* and *Newman Myers, supra*); *Soundview Cinemas Inc. v. Great Am. Ins. Grp.*, 71 Misc. 3d 493, 142 N.Y.S.3d 724, 734-35 (N.Y. Sup. Ct. 2021); *Mangia Rest. Corp. v. Utica First Ins. Co.*, No. 713847/ 2020, 2021 WL 1705760, at *5 (N.Y. Sup. Ct. 2021)

SA Hospitality has not pointed to any New York case that reached a contrary conclusion about language like "direct physical loss of or physical damage to

---

[3] *Deer Mountain Inn, LLC, et, al, v. Union Ins. Co.*, No. 120CV0984BKSDJS, 2021 WL 2076218, at *1 (N.D.N.Y. May 24, 2021); *Rye Ridge Corp. v. Cincinnati Ins. Co.*, No. 20 CIV. 7132 (LGS), 2021 WL 1600475, at *3 (S.D.N.Y. Apr. 23, 2021); *Kim-Chee, LLC v. Phila. Indemnity Ins. Co.*, No. 1:20-CV-1136, 2021 WL 1600831, at *4 (W.D.N.Y. Apr. 23, 2021); *Mohawk Gaming Enterprises, LLC v. Affiliated FM Ins. Co.*, No. 8:20-CV-701, 2021 WL 1419782, at *5 (N.D.N.Y. Apr. 15, 2021); *Jeffrey M. Dressel, D.D.S., P.C. v. Hartford Ins. Co. of the Midwest, Inc.*, No. 20-CV-2777(KAM)(VMS), 2021 WL 1091711, at *5 (E.D.N.Y. Mar. 22, 2021); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20CV3350PGGRWL, 2021 WL 1034259, at *7 (S.D.N.Y. Mar. 18, 2021)(recommended ruling; *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3418 (JGK), 2021 WL 860345 (S.D.N.Y. Mar. 6, 2021); *DeMoura v. Cont'l Cas. Co.*, No. 20CV2912NGGSIL, 2021 WL 848840, (E.D.N.Y. Mar. 5, 2021*); Tappo of Buffalo, LLC v. Erie Ins. Co.*, No. 20-CV-754V(SR), 2020 WL 7867553, at *4 (W.D.N.Y. Dec. 29, 2020); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 CIV. 4471 (LGS), 2020 WL 7360252, at *2 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20 CIV. 4612 (JPC), 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020), *appeal withdrawn*, No. 21-57, 2021 WL 1408305 (2d Cir. Mar. 23, 2021).

property," or any split from *Roundabout Theater* in the New York Appellate Division, or even among the federal courts or state trial courts applying New York law. Instead, Plaintiff argues that *Roundabout Theater* is contrary to well-settled New York insurance law principles. [Pl. Mem. in Opp'n at 12-17]. First, Plaintiff argues that the *Roundabout Theatre* court conflated the terms "loss" with "damage," notwithstanding their separation by the disjunctive "or". [*Id.* at 14]. The Court disagrees. *Roundabout Theater* considered and rejected a similar surplusage argument:

> The [lower] court's interpretation that the phrase 'loss of' must include 'loss of use of,' because otherwise 'loss of' would be redundant to 'destruction of,' is flawed. Initially, as [defendant] points out, 'loss of' could refer to the theft or misplacement of theatre property that is neither damaged nor destroyed, yet still requires the cancellation of performances.

751 N.Y.S.2d at 8.

Moreover, the phrase "loss of" is narrowed by the condition immediately preceding it: "*due to direct physical* [loss of]…" *supra.* 2. As Judge Cronan observed in *Michael Cetta, Inc. v. Admiral Indem. Co.*, *Roundabout Theatre*'s holding that "loss of use" does not broadly constitute a "direct physical loss of or damage to property" also comports with the ordinary and industry usage of these terms. No. 20 CIV. 4612 (JPC), 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020) (citing Black's Law Dictionary as to industry usage). As to the language's ordinary usage, Judge Cronan posited that if a pond were closed to fishing because of a swim race, the fisherman lost the use of the premises for his intended purpose without "direct physical loss of or damage to" the pond. *Id.* Similarly, if a parent were to prohibit a

teenager from driving as a punishment, the teenager lost use of the vehicle, but the vehicle was unaltered. *Id.*

Plaintiff cites no New York caselaw or other authority questioning the wisdom of *Roundabout Theatre.* Nor has it cited any authority suggesting the highest court of that state should or would overrule it. On the contrary, *Roundabout Theatre* is well settled and near-universally applied New York law. The only authority to reach a conflicting position under New York law is *Kingray Inc. v. Farmers Grp. Inc.*, No. EDCV20963JGBSPX, 2021 WL 837622, at *7 (C.D. Cal. Mar. 4, 2021). There, a beauty salon argued that the COVID-19 closure orders constituted "direct physical loss or damage" to its property. The Central District of California held that temporary dispossession of its property could constitute "direct physical loss," relying on the disjunctive "or" in the operative language. However, the district court did not address *Roundabout Theatre* or the line of authority from state and federal courts in New York applying *Roundabout Theatre*. The Court finds *Kingray, Inc.* unpersuasive as it relies on the surplusage argument expressly rejected by *Roundabout Theatre* without addressing why the New York Court of Appeals would reach a contrary outcome. No other court applying New York law has followed *Kingray*'s interpretation of similar language. The Northern District of New York rejected its interpretation in *Deer Mountain LLC, et al. v. Union Ins. Co.*, No. 120CV0984BKSDJS, 2021 WL 2076218, at *7 (N.D.N.Y. May 24, 2021) and distinguished *Kingray* from the line of authority applying *Roundabout Theatre.*

Plaintiff argues instead that "[t]he Third Circuit, interpreting New York law, has clearly held that it is not necessary for there to be a physical change in the

property for there to be a "physical loss;" it is enough that the property cannot be used for its intended purpose." [Pl. Mem. in Opp'n at 17](citing *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (2002)).  To the extent *Port Authority,* can be construed to suggest *Roundabout Theaters* was wrongly decided, it does not presage *Roundabout Theaters'* reversal. Notably, nearly two decades after the Third Circuit issued its decision, the many cases cited above apply *Roundabout Theaters*.

Plaintiff's reliance on *Port Authority* is misplaced for two reasons.  Plaintiff overstates the Third Circuit's holding and the facts of this case are distinguishable. The issue in *Port Authority* was whether the presence of asbestos at levels below the threshold considered unsafe by the EPA constituted "physical loss or damage" under a property insurance policy. 311 F.3d at 231-32. In a matter of first impression under New York and New Jersey law, the Third Circuit held that an insured suffers a loss when the structure is rendered uninhabitable and unusable by large quantities of asbestos in the air, or there is a threat of imminent release in such dangerous quantities. *Id.* at 236. "The mere presence of asbestos, or the general threat of future damage from that presence, lacks the distinct and demonstrable character necessary for first-party insurance coverage." *Id.* The Third Circuit affirmed the grant of summary judgment because the insured failed to show evidence of an imminent threat of asbestos contamination. *Id.*

*Port Authority* makes clear how an insured could suffer a "direct physical loss" without structural damage to the property under New York law, thus avoiding surplusage. The concept of "physical loss" in *Port Authority* is still premised on

the existence of a physical, tangible force adversely affecting the property to such a degree rendering it unsuitable for its intended purpose, but yet it is not tantamount to "damage." Friable asbestos is or can easily become air bound and create a physical condition inimical to human health and safety. The out-of-jurisdiction cases do not alter this conclusion. "To be sure, the cases involving odors, noxious fumes, and water contamination did not involve tangible, structural damage to the architecture of the premises. But the critical policy term at issue, requiring "physical loss or damage," does not require that the physical loss or damage be tangible, structural or even visible." *Newman Myers*, 17 F. Supp. 3d at 330. Similarly, the Policy's operative language could refer to "loss" to mean the absolute destruction of the property, as the Policy does not include the language "destruction of" that was present in *Roundabout Theatre*. *See Michael Cetta*, 2020 WL 7321405, at *9.

Turning now to the policy at issue, the operative language "…*due to direct physical loss of* or direct physical damage to property*" unambiguously requires SA Hospitality to show "….demonstrable [physical] harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Newman Myers*, 17 F. Supp. 3d at 331 (citing *Roundabout Theatre Co.*, 751 N.Y.S.2d at 5). SA Hospitality alleges that the civil closure orders were the cause of their loss, not the virus. [Compl. ¶ 60]("… predominant cause, and thus the efficient proximate cause of Plaintiffs', and other Class Members' losses, were the Closure Orders, not because coronavirus was found in or on Plaintiffs' insured

property."). SA Hospitality does not allege that any of its establishments were contaminated by the virus or that any public health official directed the closure of any of its establishments because the virus was detected there. On the contrary, SA Hospitality seeks to proceed on a class basis, arguing that closure orders affect policy holders nationwide. [Compl. ¶¶ 48, 62-65].

Consequently, because SA Hospitality failed to plead that it sustained a "…*direct physical loss of* or direct physical damage to property*,"* it fails to establish an entitlement to declaratory relief on Count One of the Complaint for Business Income coverage.  Count Two of the Complaint for breach of contract based on Hartford's denial of its claim necessarily fails because SA Hospitality is not entitled to Business Income coverage under the Policy.

For the same reason, Counts Five and Six fail. SA Hospitality is not entitled to extra expense coverage. The term "Extra Expense" means, in relevant part, " … expenses you incur during the Period of Restoration that you would not have incurred *if there had been no direct physical loss of or direct physical damage to property caused by or resulting from a Covered Cause of Loss* at "Scheduled Premises". *Supra.* 3. (emphasis added). This language unequivocally requires SA Hospitality to show that it suffered a "direct physical loss of or physical damage to property." Accordingly, the Court dismisses Counts Five and Six of the Complaint.

IV.   <u>Civil Authority Coverage</u>

The Policy's Civil Authority provision operates to extend Business Income and Extra Expense coverage "…when access to your "Scheduled Premises" is specifically prohibited by order of a civil authority as the direct result of a Covered

Cause of Loss to property in the immediate area of your 'Scheduled Premises.' " *Supra*. 3-4. Thus, to trigger Civil Authority coverage, SA Hospitality must show that: (a) a civil authority order (2) prohibits access to a Scheduled Premises, (3) as the direct result of a Covered Cause of Loss, (4) to property in the immediate area of the Scheduled Premise.

The term "Covered Cause of Loss" is defined by cross reference to mean "…*direct physical loss or direct physical damage* that occurs during the Policy Period and in the Coverage Territory unless the loss or damage is excluded or limited in this policy." *Supra*. 3 (emphasis added).

Hartford Fire argues that SA Hospitality has not alleged "direct physical loss" to its premises or in the immediate area. [Def. Mem. in Supp. at 20]. Next, Hartford Fire argues that SA Hospitality does not allege access to their Scheduled Premise was prohibited because restaurants have been allowed to operate take out and delivery services. [*Id*. at 21]. Third, Hartford Fire argues that SA Hospitality failed to allege that any prohibition against accessing the subject property was the "direct result" of damage to "property in the immediate area." [*Id*. at 22-23].

Plaintiff fails to satisfy the first essential element and therefore the Court need not analyze the remaining three elements. Since SA Hospitality cannot allege "*direct physical loss,*" it cannot allege that the civil authority orders were a "direct result of a Covered Cause of Loss." *See Sharde Harvey, DDS, PLLC*, 2021 WL 1034259, at *14 (S.D.N.Y. Mar. 18, 2021)(citing *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd*., No. 20-CV-3418 (JGK), 2021 WL 860345, at * 4 (S.D.N.Y. Mar. 6, 2021); *Tappo of Buffalo, LLC v. Erie Ins. Co*., No. 20-CV-754V(SR), 2020 WL

7867553, at *4 (W.D.N.Y. Dec. 19, 2020); *Visconti Bus Serv., LLC,* 2021 WL 609851 at *1, *10; *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20 CIV. 4471 (LGS), 2020 WL 7360252, at *2-3 (S.D.N.Y. Dec. 15, 2020); *Michael Cetta*, 2020 WL 7321405 at *11).

SA Hospitality does not present any authority suggesting that the language in the civil authority provision should be interpreted more expansively than the identical condition contained in the insuring agreement of the business interruption section. *See* [Pl. Mem. in Opp'n at 26].

Therefore, the Court grants Hartford Fire's motion to dismiss Counts Three and Four.

It is unnecessary to consider Hartford Fire's remaining arguments, including whether the virus exclusion applies because SA Hospitality is unable to allege that it triggered coverage under the Policy.

## Conclusion

For the foregoing reasons, the Court GRANTS Hartford Fire's Motion to Dismiss on all counts. As the Court noted, the Defendant voluntarily dismissed the action in the Southern District of New York and has thus had the opportunity to amend its allegations. Moreover, the Court finds that allowing leave to amend would be futile. This case is DISMISSED with prejudice. The Clerk is directed to close this matter.

It is so ORDERED.


                                          /s/
                                   _____
                                   Vanessa L. Bryant
                                   United States District Judge


Dated at Hartford, Connecticut, this June 3, 2021